MICHAEL S. GREGER (BAR NO. 156525)
A. KENNETH HENNESAY, JR. (BAR NO. 187531)
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
1900 Main Street, Fifth Floor
Irvine, California 92614-7321
Phone: (949) 553-1313
Fax: (949) 553-8354
E-Mail: mgreger@allenmatkins.co
 khennesay@allenmatkins.com

Attorneys for Creditor
EOP-PENINSULA OFFICE PARK, L.L.C.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CONNECTIX CORPORATION,<br><br>Debtor. | Case No. 05-55648-MM7<br><br>Chapter 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, LLC) [DOCKET 79]**<br><br>[HEARING TO BE SET] |

Creditor, EOP-Peninsula Office Park, LLC ("EOP"), by and through its attorneys, submits this Memorandum of Points and Authorities in Support of Request for Hearing in Response to Trustee's Objection to Claim 66 (EOP-Peninsula Office Park, L.L.C.).

**I.   INTRODUCTION**

The Trustee's claim objection is premised upon two critical errors. First, the Trustee seeks to apply the acknowledged minority rule for calculating the cap on lease rejection damages. Instead of calculating the cap by multiplying the aggregate rent due under the lease from the date EOP recovered possession of its leased premises through the natural termination of the lease by 15%, as is required by section 502(b)(6) of the Bankruptcy Code, the Trustee argues that the 15% formula refers to the time remaining on the lease, rather than rent – an approach rejected by

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO
TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

Case: 05-55648   Doc# 92   Filed: 03/23/06   Entered: 03/23/06 15:38:00   Page 1 of 9

the majority of courts that have considered the issue. The Trustee's error causes her to understate the cap for EOP's claim by approximately $240,255.

Second, the Trustee argues that the Ninth Circuit's ruling in <u>AB Liquidating Corp.</u>, 416 F.3d 961 (9th Cir. 2005), applies in this case and that EOP's prepetition draw on a letter of credit that previously secured its lease must reduce EOP's capped claim. This argument, however, is incorrect. Specifically, the Ninth Circuit Bankruptcy Appellate Panel in <u>In re Condor Systems, Inc.</u>, 296 B.R. 5, 14 (B.A.P. 9th Cir. 2003), determined that the cap under section 502(b)(7) – a cap analogous to the cap on a landlord's damages – is calculated <u>as of the petition date and that any prepetition payments to the creditor "are irrelevant."</u> <u>Id.</u> Here, there is no question that EOP's letter of credit had been fully exhausted and applied prior to the petition date. Given that any prepetition payments are irrelevant to the calculation of the cap under Ninth Circuit law and that the letter of credit and its proceeds had been fully applied in accordance with state law prior to the petition date, EOP's damage cap, which must be calculated as of the petition date, cannot be reduced by the prepetition draw and application of the letter of credit.

The combination of the two errors committed by the Trustee causes her to understate EOP's lease rejection cap by an amount of $1,889,036.93. Accordingly, EOP opposes the Trustee's objection to its claim.

## II. **BACKGROUND**

Connectix Corporation (the "Debtor"), as tenant, and EOP, as landlord, are parties to a Lease Agreement dated May 12, 1997 (as amended, the "Lease") with respect to nonresidential real property located at 2955 Campus Drive, San Mateo, California (the "Premises").

As part of the Debtor's obligations to secure performance under the Lease, the Lease required that the Debtor provide EOP with a letter of credit (the "Letter of Credit").

In breach of its obligations under the Lease, the Debtor failed to pay the rent and other charges that came due under the Lease on September 1, 2003. Later that month, the Debtor abandoned the Premises, also in breach of the Lease. EOP retook possession of the Premises and terminated the Lease on or about September 23, 2003.

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

-2-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO
TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

Case: 05-55648    Doc# 92    Filed: 03/23/06    Entered: 03/23/06 15:38:00    Page 2 of 9

Pursuant to the terms of the Lease and Section 1951.2 of the California Civil Code, upon termination of the Lease, all future rent and other charges accelerated and became due resulting in the Debtor having a current obligation to EOP in the amount of $14,491,303.13. In order to recoup some of these damages, EOP made two draws on the Letter of Credit and applied the Letter of Credit to its state law damages that accrued upon the termination of the Lease. The first draw in the amount of $646,608.88 occurred on January 8, 2004 and the second draw in the amount of $1,002,173.12 occurred on February 18, 2004. The second and final draw occurred approximately 19 months prior to the filing of the bankruptcy petition.

The rent, operating expenses and other charges under the Lease exceeded $150,000 per month as of September 2003, with increases to occur in August 2004 and August 2007. The term of the Lease runs through July 2010.

On September 9, 2005, the Debtor filed for relief under chapter 7 of the Bankruptcy Code in this Court. Prior to the bankruptcy filing, all that remained of the Debtor was a shell because all the Debtor's assets were liquidated and wound up when the business ceased with the "sole exception" of satisfying EOP's claim.[1]

### III. THE TRUSTEE'S OBJECTION

In reviewing the Trustee's objection, the Trustee does not object to the fact that EOP holds a valid claim against the Debtor's estate.[2] Rather, the Trustee objects to the calculation of the claim and EOP's application of the prepetition draw down on the Letter of Credit against its total damages rather than the 502(b)(6) "capped" amount.[3]

---

[1] As stated in EOP's Motion for Dismissal of Chapter 7 Case, or in the Alternative, for an Order Compelling Trustee to Abandon Estate's Interest in Claims Against Insiders and Granting Limited Relief from Stay to Liquidate Claim Against Debtor, the accompanying Memorandum of Points and Authorities and Declaration of A. Kenneth Hennesay, Jr., the Lease was breached after the Debtor sold its assets and made several distributions to insiders of the company.

[2] As asserted in EOP's proof of claim, EOP does not waive any of its rights to assert claims in a non-bankruptcy forum against former insiders of the Debtor.

[3] The objection filed by the Trustee states that EOP's claim violates Bankruptcy Code section 502(b)(7). EOP assumes that the Trustee intended to cite section 502(b)(6) because section 502(b)(6) applies to a landlord's claim for unpaid rent. Section 502(b)(7) addresses an employee's claim for damages and EOP was never an employee of the Debtor.

Allen Matkins Leck Gamble & Mallory LLP
*attorneys at law*

-3-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

Case: 05-55648    Doc# 92    Filed: 03/23/06    Entered: 03/23/06 15:38:00    Page 3 of 9

## IV. EOP'S RESPONSE

### A. Calculation of Damages

Section 502(b)(6) reads in pertinent part that the court:

> (b) . . . after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that –
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds -
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15%, not to exceed three years, of the remaining term of such lease, following the earlier of –
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, or the earlier of such dates.

There is a split of authority as to how the cap is calculated under the 15% formula. The majority of courts that have considered the issue have determined that the 15% cap is calculated by multiplying aggregate rent due from the date the landlord recovers possession of the leased premises through the natural expiration of the lease by 15% (the "Rent Approach"). See, e.g., In re Highland Superstores, Inc., 154 F.3d 573, 577 (6th Cir. 1998); In re Today's Woman of Florida, Inc., 195 B.R. 506, 508 (Bankr. M.D. Fla. 1996); In re Financial News Network, Inc., 149 B.R. 348, 351 (Bankr. S.D.N.Y. 1993); and In re Communicall Cent., Inc., 106 B.R. 540, 544 (Bankr. N.D. Ill. 1989). As stated by the Court in In re Gantos, Inc., 176 B.R. 793, 796 (Bankr. W.D. Mich. 1995) (citations omitted):

> The 15% quantifies the aggregate rent remaining and not the time remaining under the Lease. Although not a model of clarity, this appears to be the most natural interpretation of the statutory language. A majority of the case law supports this position. Id.

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

1   A minority of courts have adopted a different methodology. They would calculate the
2   15% formula as 15% of the time remaining on the lease and then look to the lease to determine the
3   rent reserved during that 15% time period (the "Time Approach"). See, e.g., In re Iron Oak Supply
4   Corp. 169 B.R. 414 (Bankr. E.D. Cal. 1994). The Time Approach will reduce a landlord's cap
5   calculation where the rent reserved under the lease is not constant but rather increases over the
6   term of the lease.

7   Predictably, the Trustee asks this Court to adopt the Time Approach rather than the Rent
8   Approach. The Trustee's position should be rejected by this Court both because she advocates the
9   minority position and because the Time Approach is not the natural or reasonable reading of the
10  statute. The Rent Approach is the more reasonable approach because a typical calculation of
11  damages in any situation is to look at the amounts owed over the term of the lease or contract and
12  not the actual number of months or years to determine a damages amount. Such a calculation
13  addresses the possibility of payment or cost escalations under a lease or contract. Thus,
14  presumably, to then calculate the statutory cap based on the Time Approach is to stretch the
15  calculation outside of what a typical member of Congress would have foreseen.

16  Because the Trustee's objection is premised upon the Time Approach and not the Rent
17  Approach, the Trustee's objection should be overruled. Consequently, EOP's claim must be
18  allowed as filed.

19  **B.   Application of the Letter of Credit Proceeds**

20  The Trustee's objection also asserts that EOP's prepetition application of the Letter of
21  Credit proceeds to its damages should result in a reduction of the cap by the amount of the Letter
22  of Credit. In support of this assertion, the Trustee cites the following two cases: (1) In re AB
23  Liquidating Corp., 416 F.3d 961 (9th Cir. 2005); and (2) In re Mayan Networks Corp., 306 B.R.
24  295 (9th Cir. 2004). Neither of these cases, however, are applicable to the instant facts because in
25  both cases the letter of credit was existing as of the petition date and had not yet been applied to
26  the landlord's state law damage claim. Rather, the instant case is controlled by the Ninth Circuit
27  Bankruptcy Appellate Panel's ruling in Condor.

28

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

-5-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO
TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

1   In Condor, the Ninth Circuit B.A.P. analyzed the language in the preambular portion of
2   section 502(b) - which reads the court "shall determine the amount of such claim in lawful
3   currency of the United States *as of the date of the filing of the petition*" - and held this language
4   "admits of one reading", that the "date of the filing of the bankruptcy is the measuring date for
5   determining substantive damages, while the earlier of the date of termination or the date of filing
6   is the measuring date for determining the 502(b)(7) cap." Id. at 14. Indeed, the Ninth Circuit
7   B.A.P. expressly held that "prepetition payments are irrelevant" to the cap calculation under
8   section 502(b) even where such a result would benefit the creditor.[4] Id. at 14-15.

Clearly, based on the Ninth Circuit's reading of the preambular language of section 502(b) and the inapplicability of the cases cited by the Trustee, EOP was correct in subtracting from its total damages the amount of the Letter of Credit instead of subtracting it from the statutorily capped amount. There is no dispute in this case, EOP lawfully terminated the Lease as a result of the Debtor's defaults on or about September 23, 2003. Under both California law and the Lease, upon the termination of the Lease, EOP's state law damage claim accrued and came due. See Cal. Civ. Code § 1951.2. Given that EOP properly accrued its damage claim as of the Lease termination, EOP had the right under state law to draw on the Letter of Credit and apply its proceeds to its state law damage claim as a matter of law. Thus, by the time the bankruptcy petition was filed, neither the Letter of Credit nor its proceeds existed. Because no letter of credit existed as of the petition date and the Condor court mandates that the cap be calculated as of the petition date, EOP's capped claim is not reduced by its prepetition draw and application of its Letter of Credit proceeds as a matter of law. Indeed, EOP's application of the Letter of Credit proceeds to its Lease is no different than if the Debtor paid the same amount prepetition to EOP. There is no question that such prepetition payments have no effect on the cap.

Finally, even if the Court decides that the foregoing is incorrect – which EOP respectfully asserts is not the case – the Mayan court made clear that the cap should not be reduced by a letter of credit where the draw had no adverse impact on the estate. Id. at 300. Here, the Trustee cannot

---

[4] Condor involved section 502(b)(7). Given that both sections are subsections of section 502(b), there is no basis to distinguish the Condor ruling.

Allen Matkins Leck
Gamble & Mallory LLP
*attorneys at law*

-6-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO
TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

Case: 05-55648    Doc# 92    Filed: 03/23/06    Entered: 03/23/06 15:38:00    Page 6 of 9

demonstrate that EOP's draw on the Letter of Credit had any possible impact on the bankruptcy estate. As readily admitted by the Debtor in its schedules, as of June 2005, approximately 16 months after EOP's draw on the Letter of Credit, and prior to its bankruptcy filing, the Debtor still had in excess of $3,600,000 in cash. This amount was more than sufficient to satisfy all claims against the estate including EOP's capped claim unreduced by the Letter of Credit proceeds. Thus, there is no question that EOP's draw on the Letter of Credit – which occurred approximately a year and a half earlier – had no impact on the bankruptcy estate.[5]

To the contrary, what impacted the bankruptcy estate was not EOP's draw, but the Debtor's insiders' theft of millions of dollars in cash in the form of unlawful corporate distributions to shareholders. The Debtor's insiders/majority shareholders openly acknowledge in the Debtor's statement of financial affairs that only months prior to filing bankruptcy that they unlawfully took in excess of $3,000,000 in cash from the Debtor in the form of unlawful corporate distributions. This theft of cash, not EOP's draw on the Letter of Credit which occurred more than one year earlier, left the estate insolvent and thus impacted the estate. Given that EOP's draw had no impact on the estate, then, even if Mayan and AB are applicable, EOP's cap should not be reduced by the proceeds of the Letter of Credit. Instead, the Debtor's majority shareholders and insiders must be made to disgorge what they stole from the Debtor because that theft, not EOP's draw, is what impacted the estate.

## V. CONCLUSION

For the foregoing reasons, EOP respectfully urges this Court to overrule the Trustee's claim objection.

Dated: March 23, 2006

ALLEN MATKINS LECK GAMBLE
& MALLORY LLP


By:  */S/ MICHAEL S. GREGER*
MICHAEL S. GREGER
Attorneys for Creditor
EOP-PENINSULA OFFICE PARK, L.L.C.

---

[5]  The Trustee has also not introduced any evidence demonstrating whether or not the Letter of Credit was even secured by the Debtor's assets. For this reason alone, the Trustee's objection must be denied.

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA  ) 
                     ) ss.: 
COUNTY OF ORANGE     )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 1900 Main Street, Fifth Floor, Irvine, California 92614-7321.

On March 23, 2006, I served on interested parties in said action the within:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, LLC) [DOCKET 79]**

by placing a true copy thereof in sealed envelope(s) addressed as stated on the attached mailing list and causing such envelope(s) to be deposited in the U.S. Mail at Irvine, California.

I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on March 23, 2006, at Irvine, California.

| Kim Rodriguez | */s/ Kim Rodriguez* |
|---|---|
| (Type or print name) | (Signature) |

Allen Matkins Leck Gamble & Mallory LLP
attorneys at law

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

Case: 05-55648  Doc# 92  Filed: 03/23/06  Entered: 03/23/06 15:38:00  Page 8 of 9

In re Connectix Corporation
USBC Case No. 05-55648-MM7

# MAILING LIST

**Debtor's Counsel**

James A. Tiemstra, Esq.
Law Offices of James A. Tiemstra
409 Thirteenth Street, 15th Floor
Oakland, CA 94612-2605

Amy Matthew, Esq.
Miller, Starr & Regalia
1331 N. California Blvd., 5th Floor
P.O. Box 8177
Walnut Creek, CA 94596

**Insiders' Counsel**

Jess B. Millikan, Esq.
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, CA 94108

**Chapter 7 Trustee**

Carol Wu, Esq.
25A Crescent Drive #413
Pleasant Hill, CA 94523

**Chapter 7 Trustee's Counsel**

Reidun Stromsheim, Esq.
Linda Sorensen, Esq.
Stromsheim and Associates
353 Sacramento Street, Suite 860
San Francisco, CA 94111

**Allen Matkins Leck Gamble & Mallory LLP**
*attorneys at law*

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE TO
TRUSTEE'S OBJECTION TO CLAIM 66 (EOP-PENINSULA OFFICE PARK, L.L.C.)

Case: 05-55648   Doc# 92   Filed: 03/23/06   Entered: 03/23/06 15:38:00   Page 9 of 9