Jess B. Millikan, SBN 095540
Richard G. Birinyi, Wash.BN 9212
E-mail: jess.millikan@bullivant.com
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701

Attorneys for Bonnie Fought, Jonathan F. Garber, Roy K. McDonald

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CONNECTIX CORPORATION,<br><br>Debtor. | Case No.: 05-55648-MM7<br><br>CHAPTER 7<br><br>**MEMORANDUM IN SUPPORT OF TRUSTEE'S OBJECTION TO CLAIM**<br><br>Date: December 8, 2006<br>Time: 11:00 a.m.<br>Place: United States Bankruptcy Court<br>       280 South First Street<br>       San Jose, CA 95113<br>       Courtroom 3070 |

Parties in interest, Bonnie Fought, Jonathan F. Garber and Roy K. McDonald ("Shareholder Parties"), by and through their counsel of record, hereby respectfully submit the following Memorandum in Support of the Trustee's Objection to the claim filed by EOP-Peninsula Office Park, LLC ("EOP").

**I. FACTS**

As the Court recalls, Connectix Corporation is a solvent company that filed its Chapter 7 bankruptcy case for the purpose of winding up its affairs and distributing the remaining funds in the manner provided under the provisions of Chapter 7. We are back before the Court on the Trustee's objection to EOP's claim under 11 U.S.C. § 506(b)(6).

-1-
MEMORANDUM IN SUPPORT OF TRUSTEE'S OBJECTION TO CLAIM

There are two basic issues that need to be decided in connection with the claim objection:[1]

- First, whether the 15% "cap" under § 502(b)(6) is calculated based on the remaining time, or the remaining rent, under the lease.
- Second, whether the Trustee is entitled to credit for $1,648,782 which EOP obtained by drawing on Connectix's letter of credit, or whether EOP is entitled to retain those funds *in addition to* the amount allowed under § 502(b)(6).

The Shareholder Parties respectfully submit that the Trustee's objection correctly interprets the statute, that her objection should be sustained, and that EOP's claim should be disallowed except as to $446,247.06.

## II. ARGUMENT

**A. The 15% reference in 11 U.S.C. § 502(b)(6) refers to the next ensuing time period, not the dollar value of the remaining rent**

EOP asks this court to conclude that the statutory language – "the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease" -- permits it to calculate the cap based on all rent owed under the remaining 6.5 years of the lease, *including* increases which would not have come into effect for many years. That calculation allows EOP to accelerate the benefit of rent increases (without, the Shareholder Parties note, any correlative reduction to present value), and to increase the capped claim by almost a quarter of a million dollars.

Precisely the same argument was rejected in *In re Iron Oak Supply Corp.*, 169 B.R. 414 (Bankr.E.D.Cal.1994), because it would nullify the statutory prescription that the calculation be based on rent "without acceleration":

> The correct interpretation, however, is that the Congress intended that the phrase "remaining term" be a measure of time, not rent. *Sunbeam-Oster*, 145 B.R. at 828, *aff'g In re Allegheny Int'l, Inc.*, 136 B.R. 396, cited with approval, *Financial News*, 149 B.R. at 353. The statute is worded in terms of time periods. *Sunbeam-Oster*, 145 B.R. at 828; *Allegheny Int'l*, 136 B.R. at

---

[1] At the present time, the parties have not been able to agree on the specific facts with respect to the resolution of either issue.

-2-
MEMORANDUM IN SUPPORT OF TRUSTEE'S OBJECTION TO CLAIM

402.

> The phrase "without acceleration" only makes sense in terms of a reference to the next succeeding periods under the lease. Taking 15 percent of all the rent for the remaining term, especially where escalation clauses are present, would be tantamount to effecting an acceleration. *Id.* at 403.
>
> Thus, it is necessary to calculate the rent that would accrue in the absence of lease termination to the first 15 percent of the remaining term, here 14.21 months. Any escalators that would take effect during those 14.21 months are to be honored. Id. at 402; *see In re Bonwit, Lennon & Co.*, 36 F.Supp. 97, 99-100 (D.Md.1940). Conversely, as in *Allegheny Int'l*, any months of free or reduced rent scheduled under the lease during those months are similarly to be honored. *Allegheny Int'l,* 136 B.R. at 402-03, *aff'd, Sunbeam-Oster,* 145 B.R. at 828.

*Id.* 169 B.R. at 420. *See also In Re Ace Electrical Acquisition, LLC*, 342 B.R. 831 (Bankr.M.D.Fla.2005)(15% refers to time, not money, citing *Collier on Bankruptcy*, 15th Ed. Revised 502.03[7][c]). The problem with EOP's position, and indeed all the cases which use the money model, is that the statutory provision is ultimately based on pre-code case authority and statutes which were directly based on the time model. There is no suggestion in the legislative history that Congress intended to abandon the well understood legal standard that governed calculation of the cap.

The court in Maryland recently discussed the distinction between the money model and time model cases to reject an argument by a landlord that the 12 month period specified in the statute meant 12 months of average rent, not the ensuing 12 months.

> Debtor's position finds further support in the predecessor of Section 502(b)(6), Section 63(a)(9) of the Bankruptcy Act, 11 U.S.C. § 103(a)(9) (repealed 1978). Under Section 63(a)(9) of the Bankruptcy Act, a landlord's claim for rejection damages could not exceed "the rent reserved by the lease, without acceleration, for the year next succeeding the date of surrender." (Emphasis added). Absent any evidence from the plain language or legislative history of Section 502(b)(6) that Congress intended to modify how the one-year period is determined in the calculation of the rejection damage cap, this Court is inclined to accept that no such intention to change existed and that the rent reserved for one year is the year next succeeding the earlier of the petition date or date of surrender. *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957) (stating that "no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed"); *see also In re Woodscape Ltd. Partnership*, 134 B.R. 165 (Bankr.D.Md.1991)(*citing Midlantic Nat'l Bank v. New Jersey*

*Dep't of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986)).

*In Re Usinternetworking, Inc.*, 291 B.R. 378, 381-82 (Bankr.D.Md.2003). This analysis applies with equal force to EOP's efforts to have this court apply the "money" model. There is nothing in the legislative history to indicate that Congress intended to abandon the time calculation when it provided for the increase in the amount of time allowed to landlords with long term leases. As the Court recognized in *In Re Ace Electrical Acquisition, supra*, the statutory provision compares two time periods and is limited to a third time period. The Shareholder Parties respectfully suggest that the cases which adopt a "money" model are wrongly decided and do not reflect a proper interpretation of the provisions of § 502(b)(6).[2]

**B. The Ninth Circuit has expressly ruled that EOP's claim must be reduced by the amounts it received when it drew on Connectix's letter of credit**

EOP is equally mistaken in its argument that it can retain the $1,648,782 which it received from Connectix's letter of credit *in addition to* the cap amount calculated under § 502(b)(6). As the Trustee correctly indicates, the Letter of Credit was secured by the debtor's assets, so that if EOP had not drawn on the Letter of Credit, the size of the estate would have been larger by the amount of the security.

EOP's view was rejected by the Ninth Circuit just last year. *In re AB Liquidating Corp.*, 416 F.3d 961, 964 (9th Cir. 2005). *See also in In re Mayan Networks,* 306 B.R. 295, 301 (9th Cir. BAP 2004) and *In re PPI Enters., Inc.*, 228 B.R. 339, 344-45 (Bankr.D.Del.1998) *aff'd* 324 F.3d 197 (3rd Cir. 2003), which was cited with approval by the Ninth Circuit in *In re Sylmar*, 314 F.3d 1070, 1075 (9th Cir. 2002). Indeed, in *PPI*, the landlord had drawn on the letter of credit *five years prior* to the bankruptcy filing. The article attached by the Trustee to her Supplemental Memorandum notes that the jurisprudence concerning § 502(b)(6) agrees unanimously that in the circumstances presented by this case, the proceeds of the letter of credit should be applied to the capped claim:

---

[2] Indeed, an examination of the so-called "majority" rule cases shows that most do not analyze the prior statutory provisions and simply adopt the "money" model without any discussion.

> ...[T]hese decisions are consistent in several important respects. Where a debtor has pledged collateral to secure its reimbursement obligation to a LC issuer and a landlord files a proof of claikm in the bankruptcy case, all fo the courts would agree that the LC proceeds should be applied toward satisfaction of landlord's capped § 502(b)(6) claim.

Fishman, *Section 502(b)96) Lease Rejection Damages: Security Deposits and Letters of Credit*, at p. 18-18.

EOP's argument that the Court should not deduct the security deposit in this case from the cap calculated under § 502(b)(6) is based entirely on a case construing the limitation on claims by former employees. *See In re Condor Systems, Inc.*, 296 B.R. 5 (9th Cir. BAP 2003), *appeal dismissed*, 125 Fed.Appx. 797 (9th Cir. 2005). That decision is unpersuasive here for several reasons. First, the appeal from the Bankruptcy Appellate Panel decision was dismissed at the Ninth Circuit based on a determination that the decision was not final. Accordingly, the Shareholder Parties submit that *Condor* is of limited value as authority and perhaps only represents law of the case.[3] Second, in reaching his decision in *Condor*, Judge Klein acknowledged that the lease cases were inapplicable to the analysis of the employment termination cases. *In re Condor Systems, Inc., supra*, 296 B.R. at 18-19. And, third, in *In re AB Liquidating Corp., supra*, the Ninth Circuit expressly rebuffed the suggestion that it adopt Judge Klein's reasoning in the context of 502(b)(6).[4]

In its supplemental submission, EOP also now urges this Court to adopt dicta in a memorandum decision issued by Judge Montali.[5] Not only did Judge Montali's discussion of

---

[3] *See e.g. See Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1989) (no Ninth Circuit authority on binding nature of BAP decisions).

[4] "However, despite AMB's argument, the resolution of this appeal does not require that we decide whether Judge Klein has set forth the appropriate procedure for applying letter of credit security deposits to landlords' claims." *Id.*, 416 F.3d at 965.

[5] EOP suggests that it may cite Judge Montali's memorandum decision under the applicable local rules. The Shareholder Parties respectfully disagree. The Shareholder Parties have been unable to locate a published version of Judge Montali's memorandum decision, and under the provisions of Local District Court Rule 7-14, opinions that are not designated for publication may not be cited in other cases.

this issue involve a hypothetical situation that was not before him,[6] but his analysis relies on *Condor, supra*, and is inconsistent with the Ninth Circuit's decision in *In re AB Liquidating Corp., supra*.[7] Shareholder Parties therefore respectfully suggest that his decision should not form the basis for any adjudication of the present claim.

### III. CONCLUSION

For the foregoing reasons, the Shareholder Parties respectfully urge the Court to sustain the Trustee's objection to the EOP claim.

Respectfully submitted,

DATED: December 4, 2006.

                      BULLIVANT HOUSER BAILEY PC

                      By   /s/ Jess B. Millikan
                              Jess B. Millikan
                      Attorneys for Bonnie Fought, Jonathan F. Garber, Roy K. McDonald

---

[6] In the case before Judge Montali, it was established that the draws on the letter of credit satisfied current, on-going, pre-petition, rent obligations

[7] Judge Montali's discussion of the reason he determined that *Condor* applied to leases despite the express determination of the BAP itself is unpersuasive, especially in light of the fact that the *Condor* panel expressly declined to follow *In re PPI Enters., Inc.*, based on the fact that the lease deposit cases were special circumstances.